In re Marriage of William HOWARD,
Petitioner-Appellant,

v.

Zeola HOWARD,
Respondent-Respondent.

No. 40079.

Missouri Court of Appeals,
Eastern District,
Division One.

May 22, 1979.

Robert M. Susman, Susman & Susman, St. Louis, for petitioner-appellant.

Charles J. McMullin, St. Louis, for respondent-respondent.

SNYDER, Presiding Judge.

The husband appeals from an order of the Circuit Court of the City of St. Louis denying a motion to convert a decree of legal separation to a decree of dissolution. The specific issue presented is whether the trial court properly exercised its discretion in denying the motion on the ground that dissolution would terminate health, welfare, life insurance and pension benefits furnished the wife by the husband's union and employer. This issue naturally raises the broader question, one of first impression, of what standards should guide a trial court in exercise of its discretion in passing upon motion to convert a decree of legal separation to a decree of dissolution of marriage.

The judgment is affirmed in part, reversed in part, and remanded with instructions.

The parties were married in 1943 or 1945 in Columbus, Mississippi. They separated in 1964 and have lived since that time in separate residences. In April of 1974 the husband filed a petition for dissolution, alleging the separation and irretrievable breakdown. In her amended answer, cross-bill and counterclaim the wife denied irretrievable breakdown and requested separate maintenance and legal separation. After a trial of the issues, a decree of legal separation was entered on December 20, 1976. Maintenance, support and custody orders were made and the parties' property divided. The husband was also ordered "to retain and keep in full force and effect all employee's and union member's medical, hospital, pension, welfare, benefit programs and insurance plans and specifically name respondent as beneficiary thereof within 20 days of the date of this decree and he is to retain, maintain and continue in force all life insurance policies, and name therein respondent as said owner and beneficiary thereof within 20 days of the date of the decree."

On May 12, 1977 the husband filed a motion to convert the decree of legal separation into a decree of dissolution, alleging he and his wife had not communicated with each other since the granting of the legal separation and had made no attempt to reconcile their differences and preserve their marriage. A hearing was held on this motion on July 22, 1977 and the husband presented evidence showing no efforts at reconciliation since the decree had been granted. In response, the wife stated her opinion that the marriage was not irretrievably broken. No expert testimony or competent documentary evidence on the issue of health, welfare and insurance benefits was produced. The wife testified the husband had told her dissolution would cut off all her benefits. The wife's counsel also read into evidence the husband's answer to an interrogatory which stated that the husband's counsel believed dissolution would terminate the wife's eligibility for the benefits. The answer also outlined the benefits provided by the employer and union. The wife had continued to receive medical benefits after the decree of legal separation was issued, but it was not absolutely clear that legal separation would not reduce her benefits in some way.

Further testimony on the wife's health, income and use of the available health ben-

efits was heard on October 7, 1977. On January 16, 1978 the trial court entered judgment denying the motion to convert the decree of legal separation into a decree of dissolution. In its memorandum opinion the court found the wife was in poor health, of limited financial means and in "direct, immediate and continuing need of the benefits secured to her in the present Decree of Legal Separation." This appeal followed.

Section 452.360.3, RSMo Cum.Supp.1975, the statutory section to be construed here, provides: "No earlier than ninety days after entry of a decree of legal separation, on motion of either party, the court *may* convert the decree of legal separation to a decree of dissolution of marriage. [Emphasis added]."

The legislature, in enacting the legal separation sections of the Dissolution Act, took a different position than the drafters of the Uniform Marriage and Divorce Act. Section 302(b) of the Uniform Marriage and Divorce Act [9 ULA Matr., Fam., & Health Laws (1973)] provides: "If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form *unless the other party objects.* [Emphasis added]." Missouri chose to delete the emphasized phrase and provide, instead, a mandatory legal separation at one party's request [Section 452.305.2; *McRoberts v. McRoberts,* 555 S.W.2d 682 (Mo.App.1977)] and a mechanism for converting the legal separation into a decree of dissolution [Section 452.360.3].

■ By choosing this plan and selecting the word "may" in § 452.360.3, the legislature intended to place the decision to convert the legal separation in the sound discretion of the trial court. See, *Bloom v. Missouri Board for Architects P.E. & L.S.,* 474 S.W.2d 861 (Mo.App.1971). It is clear, however, that the trial court's exercise of that discretion must be guided by the legislative intent evidenced by the other language of the section and the general philosophy of the act.

In *McRoberts v. McRoberts, supra,* the court was presented with the conflict between the mandatory provision of §§ 452.-305.1 and 452.305.2. Although it did not reach the issue raised here, the court in commenting upon § 452.360.3 stated, at page 684, that it:

[G]ives the court authority to convert the decree of legal separation to one of dissolution of marriage on the motion of either party, which can mean only that the further legislative intent was to give the parties a 'cooling off' period for their marital differences for a ninety day period.

■ This court agrees with the *McRoberts* court that the purpose of § 452.360.3 is to allow the parties a period of time to gain perspective on their problems and have second thoughts about separation and dissolution, thereby encouraging efforts to resolve their differences. The trial court's discretion comes into play in interpreting whether the acts or events in evidence actually raise such a prospect in evaluating the likelihood of reconciliation, and in estimating the additional time the parties need, if such is the case, to resolve their differences and repair their marriage. If the facts developed at the hearing on the motion indicate no efforts at rapprochement have been made, or that efforts have been made and have failed, then the motion to convert to dissolution should be granted.

At the hearing on July 22, 1977 the husband testified no efforts at reconciliation had been made. The wife presented no evidence of events or conduct following entry of the decree of legal separation which raised any prospect of reconciliation. In light of this testimony, and the fact that the parties had been separated for thirteen years, the prospect of reconciliation was remote, and the motion to convert should have been granted.

■ It is consistent with the remedial purposes of the Dissolution Act to convert the decree to dissolution in the absence of any real prospects for current or prospective reconciliation. Maintenance, support, property division and other orders should then be entered to fairly arrange the par-

ties' finances and assure adequate support for a financially dependent spouse. Individual economic circumstances cannot override the basic philosophy and purpose of the Dissolution Act, which is the dissolution of irretrievably broken marriages. The parties' finances should not be made the basis for denying dissolution when the evidence clearly shows the marriage is broken far beyond any prospects of repair.

◼ In the vast majority of cases the discretion allowed the trial court in § 452.-360.3 should extend only to determining whether there is a possibility of reconciliation. Only in very rare cases would it be appropriate for the trial court to deny conversions when there is no evidence showing reconciliation to be possible.[1]

◼ This is not such a situation. An adequate remedy for the wife's loss of medical and pension benefits may be fashioned through a maintenance order or by entry of an order directing payment of premiums for comparable coverage. The husband could also be directed to designate the wife as beneficiary of all employee and union benefits where he has that power.

This court appreciates the problems of the trial court and the parties in this litigation and would much prefer to be able to hand down a final decision. On the present record that course is not possible and it is with reluctance that the cause is remanded. The judgment sustaining the wife's motion to quash and dismiss the husband's motion to convert is reversed. The judgment denying the husband's motion to convert is reversed. In all other respects, including the award of $500 to the wife for attorneys' fees, the judgment is affirmed.

The trial court is instructed to hold an evidentiary hearing at which testimony or competent documentary evidence may be produced on present and alternative insurance plans and possible modifications in the maintenance order. Without intending to limit the trial court's inquiry, evidence on the following points may be helpful in drafting a fair and informed order:

1. the actual terms of the insurance and pension plans now in effect;
2. whether coverage under the current plans actually ceases at dissolution;
3. the cost and availability of comparable medical coverage for the wife;
4. actual past costs of the wife's medical care, prescriptions and dental bills; and,
5. the wife's age, reported income and possible eligibility for other medical assistance.

After hearing the appropriate additional evidence concerning maintenance and health care, the trial court shall enter a decree finding irretrievable breakdown and ordering dissolution, along with a maintenance award which will adequately provide for the wife's needs.

The judgment is affirmed in part, reversed in part and remanded with instructions.

WEIER, C. J., and SMITH, J., concur.

---

1. The issue of religious grounds for opposition to conversion is not raised by the pleadings or record and will not be reached.