Peter ROJAS, Petitioner-Respondent,

v.

Rita ROJAS, Respondent-Appellant.

No. KCD 30285.

Missouri Court of Appeals,
Western District.

Feb. 4, 1980.

Motion for Rehearing and/or Transfer
Denied March 3, 1980.

Ronald R. Holliger, Laura A. Cochet, Kansas City, for respondent-appellant.

Joseph H. Moore, Hentzen, Moore & Willy, Kansas City, for petitioner-respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment converting a former degree of legal separation of the parties to a decree of final dissolution upon motion by the husband (petitioner below and respondent here). The wife (respondent below and appellant here) alleges three points upon which she seeks this Court's mandate reversing the decree of conversion, which points may be thus summarized: 1) that § 452.360(3) RSMo 1978, providing for the conversion of a decree of legal separation to a decree of dissolution is unconstitutional under the facts in this case in that its application deprives her of property without due process of law; 2) the court abused its discretion in entering the

decree of conversion because there was no substantial evidence to support such judgment; and 3) that § 452.360(3) RSMo 1978 fails to state any standards for the conversion and thereby unlawfully delegated legislative responsibility to the judiciary.

The transcript before this Court is, to say the least, meager and unsatisfactory. The testimony on the original hearing for dissolution and the subsequent hearing on the motion for conversion, combined, total 25 pages. Neither did the transcript include any of the pleadings of the parties which are of vital significance in this appeal, as will be hereafter demonstrated. The omission of these pleadings in this case placed the additional burden upon this Court of directing that the original file from the Circuit Court be sent to this Court for inspection in accordance with Rule 81.12(c). This was done in recognition of the obligations of this Court on this appeal to be fully informed of the facts as a preliminary to decision and in no sense condones the omission by counsel to furnish a complete transcript (a burden resting by law upon them) nor is to serve as a precedent in future appeals.

However, from the pleadings, the record before this Court, and facts conceded in the briefs, the following is gleaned:

The parties were married in 1950. They were separated in 1975, and in June of 1976 the husband filed his petition for dissolution in which he alleged:

"5. There is no reasonable likelihood that the marriage of the parties can be preserved, and therefore the marriage is irretrievably broken."

To the husband's petition the wife filed, on June 18, 1976, her answer and "Cross-Petition for Dissolution" duly verified under oath. In her answer she admitted the allegations of paragraph 5 of the petition, above quoted. In her cross-petition she alleged in paragraph 5 thereof the exact allegation above quoted and prayed for a decree of dissolution. On March 23, 1977, she filed, by leave of court, her First Amended Answer and Cross-Petition (unverified) in

which she again incorporated the language above quoted, but amended the prayer of her Cross-Petition to allege in pertinent part:

> "WHEREFORE, Respondent prays that the *marriage* of Petitioner and Respondent *be dissolved*; that the court award a reasonable amount for her support and maintenance; *that the court enter a Decree of Legal Separation*; * * *" (Emphasis supplied)

In his answer to the amended cross-petition, the respondent here admitted the allegation that the marriage was irretrievably broken (as he had also alleged in his petition for dissolution) but placed in issue only the allegations that the appellant here was in need of support and maintenance, and that she had need of the family residence in which to reside.

Thus, when the first hearing upon this matter was held, September 21, 1977, both parties had alleged under their oaths in the record proper and as judicial admissions that there was no reasonable likelihood that the marriage could be preserved, and therefore was irretrievably broken, although, as above noted, the appellant here in her amended cross-petition had prayed for *both* a decree of dissolution and legal separation. At the hearing, aside from the respondent-husband's statement that the marriage was, in fact, irretrievably broken, and the appellant-wife's oral request that a decree of legal separation be entered, no details of the facts or reasons for this marital status were given by either party.

Both parties testified in vague terms as to an oral property settlement which had been reached between them. The trial court at the conclusion of this hearing directed the parties to reduce this agreement to written form and took the matter under advisement. On October 27, 1977, the trial court entered a decree in which it found that the marriage was irretrievably broken; approved the terms of the (then written) separation agreement as "not unconscionable" and set the same out in full in the decree; and, ordered and adjudged that the parties were legally separated.

Neither party filed any motion to change or modify this judgment of legal separation or any of its terms, nor took an appeal therefrom.

On March 22, 1978, the husband filed his motion to convert the decree of legal separation of October 27, 1977 to a decree of dissolution under § 452.360(3) RSMo 1978. In this motion, he merely recited the previous dates and litigation occurrences and that more than 90 days had elapsed since the decree of legal separation, and prayed for the decree of conversion. The motion contained no allegation that the marriage remained irretrievably broken. The appellant-wife responded to this motion by way of suggestions, which also contained no allegation that the marriage was not irretrievably broken.

A hearing was had on this motion on May 18, 1978, before a division of the court below other than the one from which this appeal is had. The husband's testimony on direct examination was confined to the history of the litigation; that more than 90 days had elapsed from the date of the decree of legal separation, and the general statement that irreconcilable differences still existed between the parties and his continuing belief that the marriage was irretrievably broken. On cross-examination he stated that he was employed by the Santa Fe Railroad and that he had a group medical-dental plan with Travelers Insurance Company by reason of his employment; that his wife was insured under that plan under the terms of the settlement agreement and the decree of legal separation; that he "was aware" that his wife had requested the decree of legal separation so that she could continue to be covered under the medical insurance; that in addition, he was paying her $100.00 per month maintenance; and, that he was not aware that her Social Security disability payments had been terminated.

The appellant-wife testified at this hearing that she had been employed as a kindergarten teacher until 1975, although she had no teacher's degree; that she had sought to return to this work since the legal separa-

tion, without success, for the reason that degrees were now required; that she had sought employment elsewhere, including Milgram's grocery, where she had been turned down because she could not pass the physical examination; that she had been on Social Security disability, which had been terminated; and, that she had no property [1] or source of income other than the $100.00 per month maintenance paid to her by the respondent-husband. She testified about the poor state of her health; that she had undergone orthopedic surgery to her neck and back in 1975–1976; that thereafter, her doctor had stated she could do light work; and, that she had no training or skills other than teaching kindergarten for 20 years during her marriage (for which work she now was disqualified). During her 25 years of marriage, she raised three children, took care of the home, ironed, washed and managed the home.

She testified as to her signing of the separation agreement and that she read and understood it, including the provision covering the group health insurance. She stated that to replace that coverage with Blue Cross-Blue Shield, if she could qualify for such coverage, would cost $57.00 per month.

In response to questions asked her by the court, she stated that she and her husband were separated in May of 1975; that she wanted to reconcile and get back together with him "but" "He doesn't want it"; that her efforts (unstated or further described) to accomplish a reconciliation have been unsuccessful. She further stated that "He's got someone else".

It is clear from the record of this hearing that the emphasis of both parties was placed upon the economics of the relationship rather than social, emotional or personal facets thereof.

On May 26, 1978, the court below entered a decree sustaining the husband's motion and converting the Judgment Entry of legal separation of October 27, 1977 "to a decree of dissolution" and holding that said original decree of October 27, 1977 was "in all other respects unchanged". The court was not requested to and did not make any findings of fact or conclusions of law nor state any reasons, by way of memorandum, for its decree.

This record clearly called into application initially the provisions of § 452.320(1) RSMo 1978 (Laws 1977), which provide in part:

"1. *If both of the parties* by petition or otherwise *have stated under oath or affirmation that the marriage is irretrievably broken* * * * the court, after considering the aforesaid petition or statement, and after a hearing thereon shall make a finding whether or not the marriage is irretrievably broken and *shall* enter an order of dissolution or dismissal accordingly.

* * * * "

In this case, both of the parties did unequivocally, under oath, state that the marriage was irretrievably broken and nothing was offered to the contrary by either party at the initial hearing of September 21, 1977, and therefore under the foregoing statute the court would ordinarily be required to enter a decree of dissolution.

This section, however, must be read in *pari materia* with all of the provisions of the Act. *McRoberts v. McRoberts*, 555 S.W.2d 682, 683[1] (Mo.App.1977), including § 452.305 RSMo 1978, which provides in part:

" * * * *

2. If a party *requests a decree of legal separation* rather than a decree of dissolution of marriage, the court *shall grant the decree in that form*." (Emphasis supplied)

Here, the appellant did "request" a decree of legal separation in her amended cross-petition, and the court entered the initial decree in that form.

---

1. Under the terms of the separation agreement the parties deeded their home to the three children, reserving to the wife a life estate therein, and she received the furnishings therein. She agreed to pay the remaining balance of the mortgage of approximately $6200.00, taxes, insurance, etc. on the house.

While there may appear to be a possible conflict between the provisions of §§ 452.-320(1) and 452.305(2), the action of the trial court in this case, in the absence of any substantial evidence of the marital condition and the wife's request for a decree of legal separation, cannot be faulted, particularly since the initial decree is in keeping with the basic philosophy of the present Dissolution of Marriage laws of Missouri, which is to substantially eliminate the fault concept in such actions and yet provide, where possible, a "cooling off" period, consistent with the public welfare, for the resolution of marital disputes and differences and the preservation and maintenance of the family home and social unit. *In re Marriage of Howard*, 583 S.W.2d 553, 555[2, 3] (Mo.App.1979).

Of course, this salutary objective to be consistent with the remedial purposes of the Dissolution Act, when considered as a whole, needed some limitation as to time both to effect the healing or reconciliation process or to force the final conclusion that no real prospect of reconciliation of the parties or the marriage, in fact, was possible. § 452.360 RSMo 1978 provides in pertinent part:

"* * * *

3. No *earlier* than [90] days after entry of a decree of legal separation, on motion of either party, the court *may* convert the decree of legal separation to a decree of dissolution * * * *" (Emphasis supplied)

The appellant argues on this appeal that Section 452.360(3) is unconstitutional in that it deprives her of property without due process of law (Point I) and that it fails to state any standards for the conversion of a legal separation decree into a decree of dissolution and thereby unlawfully delegates legislative authority and responsibility to the judiciary (Point III).

As to Point III, the Legislature did in fact set standards and conditions for the conversion *where one of the parties has denied the fact that the marriage is irretrievably broken* (the ultimate fact for judicial determination) in § 452.320(2) RSMo

1978 and set forth therein five specific elements of fault upon one or more of which the court must be satisfied before a decree of dissolution is warranted under such circumstances.

As to Point I, the appellant has judicially admitted the ultimate fact (the irretrievable breaking of the marriage) and cannot now be heard to complain upon the broad basis stated of unconstitutional lack of due process. These sections of the Act must be considered together, and when thus considered can be easily and logically harmonized. *McRoberts v. McRoberts*, supra. However, Points I and II have no application under these facts and are without merit. By the same token, Point II, wherein the trial court is charged with an abuse of discretion in entering the decree of conversion because such decree was not supported by substantial evidence, is without merit. By reason of the judicial admissions of the parties, the inapplicability of the statutes above referred to and the utter lack of any evidence that the marriage was *not* irretrievably broken, the finding of the court herein and the entry of the conversion of the original judgment was compelled. Cf. *In re Marriage of Capstick*, 547 S.W.2d 522 (Mo.App.1977).

As noted herein, the court's initial decree of legal separation adopted the terms of the parties' separation agreement as to property division and maintenance of the wife, and held it was "not unconscionable" as it was empowered to do by § 452.325 RSMo 1978. That section permits such written separation agreements and provides that the same are binding upon the court (except as to custody, support and visitation of children):

"* * * * unless it finds, *after considering the economic circumstances of the parties and any other relevant evidence* produced by the parties, on their own motion or *on request of the court*, that the separation agreement is *unconscionable.* [Section 452.325-2]." (Emphasis supplied)

Of course, the ultimate approval or disapproval of such a settlement rests to a large measure on the discretionary judgment of the trial court. *Wilkerson v. Wilkerson*, 555 S.W.2d 689 (Mo.App.1977). The sense of the above-quoted statute, however, is clear that this discretion can only be exercised after proper consideration of the "economic circumstances" of the parties and "other relevant factors" based upon substantial evidence. It is this Court's view that the terms of the contract here involved and the evidence in the record in justification of its terms fall measurably short of the conclusion reached by the trial court, that it was "not unconscionable". For example, the income of the husband, his age, his required living expenses, the value of the marital personal property; the exact balance due on the home and the monthly payments thereon (which the wife agrees to pay from the agreed maintenance of $100.00 per month); her average additional living expenses; the condition of her health; the face amount and value of the government bonds to be distributed to her and from which she agrees to pay certain marital obligations and the amount of such obligations; whether or not she can continue to be covered by the husband's group health insurance after dissolution; the present value of his pension or retirement rights with the Santa Fe; the facts and circumstances surrounding the execution of the settlement; and, many other areas appear to be proper objects for close scrutiny and are not satisfactorily disclosed in the record. See: *Block v. Block*, 593 S.W.2d 584 (Mo.App.1979). The trial court's discretion remains inviolate after remand on these facets, at least until the record on retrial, if any, comes again before this Court. The above observations are not made and are not intended to in any way limit that court's field of inquiry nor the exercise of that discretion upon remand. *In re Marriage of Howard*, supra.

The judgment herein is affirmed as to the dissolution of the marriage of the parties. As to the holding with regard to the separation agreement, the judgment is reversed and the cause remanded with directions to the trial court to hold further evidentiary hearings and to make an additional record of the factors bearing upon the conscionable or unconscionable character of its terms and provisions.

It is so ordered.

All concur.